**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JOSHUA ROBERT BENTON,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )   **Case No. 14-CV-026-JED-PJC** |
| | ) |
| **MICHAEL ADDISON, Warden,** | ) |
| | ) |
| **Respondent.** | ) |

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Doc. 1) filed by Petitioner, a state

inmate appearing *pro se*.  Respondent filed a response (Docs. 10, 12) and provided the state court

records (Docs. 10, 11, 12, 13) necessary for adjudication of Petitioner's claims.  Petitioner filed a

reply to Respondent's response (Doc. 14). For the reasons discussed below, the petition for writ of

habeas corpus shall be denied.

### *BACKGROUND*

In December 2010, Petitioner Joshua Robert Benton (Petitioner) lived with his girlfriend,

Shannon Hicks (Hicks), and her children in Bartlesville, Oklahoma.  On the evening of Monday,

December 6, 2010, Hicks went to shop at the local Walmart, leaving the children alone with

Petitioner.  After Hicks returned from shopping, Petitioner, employed by the Washington County

Sheriff's Office, went to work the graveyard shift at the Washington County Jail.  During the

overnight hours of December 6-7, 2010, Hicks' 3-year-old son, C.N., was sick and vomited

repeatedly.  On the afternoon of Tuesday, December 7, 2010, Hicks and Petitioner awoke from

napping to find C.N. non-responsive. While Hicks called 911, Petitioner began CPR.  An ambulance

arrived and transported C.N. to Jane Phillips Hospital in Bartlesville, where he died.  The emergency

medical technician who responded to the 911 call observed no obvious external injuries to C.N.

Because he had been sick, C.N.'s death was initially attributed to illness. However, during autopsy, the medical examiner determined that C.N.'s death resulted from a "widely displaced fracture" of the lower spine and that the manner of death was homicide.

After talking to the medical examiner, Detective Steven Birmingham, an investigator for the Bartlesville Police Department, began interviewing people who had contact with C.N. in the days preceding his death. On December 8, 2010, Hicks, accompanied by Petitioner, arrived voluntarily at the police station to be interviewed. After interviewing Hicks, Birmingham encountered Petitioner in the lobby area of the police station and asked Petitioner if he would be willing to be interviewed. Petitioner agreed. At that time, Birmingham considered Petitioner to be a person of interest or a possible witness, but he did not consider Petitioner to be a suspect. During the videotaped interview, Petitioner became emotional and teared up. He admitted that, during the evening of December 6, 2010, while Hicks was away from the home, he had pushed C.N. back "a little bit" while putting him to bed. After Petitioner regained his composure, he asked Birmingham "what's going to happen?" Based on Petitioner's responses and behavior during the interview, Birmingham arrested Petitioner for child abuse. Birmingham did not advise Petitioner of his *Miranda*[1] rights either before or during the interview.

Based on those events, Petitioner was charged by Information filed in Washington County District Court, Case No. CF-2010-498, with First Degree Murder Involving the Death of a Child. On February 21-23, 2012, Petitioner was tried by a jury. He testified in his own defense and denied using force sufficient to cause C.N.'s injury. At the conclusion of trial, the jury found Petitioner guilty as charged. On May 11, 2012, the trial judge sentenced Petitioner in accordance with the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

jury's recommendation to life imprisonment. At trial, Petitioner was represented by attorneys Jim Conatser and Kristi Sanders.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney William H. Luker, Petitioner raised the following propositions of error:

Proposition 1: The trial court committed reversible error when it allowed the prosecution to introduce Appellant's statements to the police on December 8, 2010, because at the time Appellant was in police custody and was not advised of his constitutional rights. It follows that the admission of these statements and the fruits thereof violated Appellant's rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

Proposition 2: The trial court committed reversible error by permitting Jennifer Chafin, a former investigator for the Washington County Department of Human Services, to testify regarding her investigation into this case and her observations of the victim's mother because such evidence was irrelevant and prejudicial to Appellant. The admission of this evidence violated Appellant's rights to due process of law in violation of the Fourteenth Amendment of the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

Proposition 3: The trial court committed reversible error when it permitted the State to introduce the medical examiner's report into evidence over Appellant's objections. The report contained irrelevant hearsay evidence from an unidentified declarant, and the admission [of] this hearsay violated Appellant's right of confrontation as set forth in the Sixth and Fourteenth Amendments to the United States Constitution, and Article II, §§ 7 and 20 of the Oklahoma Constitution.

    A.    The introduction of this evidence violated Appellant's constitutional right to confront the witnesses against him and state law rules regarding hearsay evidence.

    B.    This evidence was also inadmissible because it was irrelevant.

Proposition 4: The trial court committed fundamental error by failing to provide Appellant instructions on the defense of accident and misfortune, and thereby deprived Appellant of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

Proposition 5: Admission of a highly prejudicial photograph of the victim's severed spinal column violated Appellant's due process rights under the Fifth, and Fourteenth Amendments of the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

Proposition 6: Appellant was deprived of a fair trial by the prosecutor's theatrics with a stick that he broke in front of the jury to speculatively simulate the breaking of the victim's spine. This improper display violated Appellant's right to due process under the Fourteenth Amendment of the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

Proposition 7: Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

    A.    Trial counsel failed to preserve the record for appellate review by failing to request necessary jury instructions and by failing to object to prosecutorial misconduct in closing argument.

    B.    Trial counsel failed to use evidence turned over to the defense in pretrial discovery to impeach Shannon Hicks.

Proposition 8: The trial court committed reversible error by refusing Appellant's request for instructions on the lesser related offense of Second Degree Murder. The trial court's refusal to provide this jury instruction violated Appellant's right to due process under the Fourteenth Amendment to the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

Proposition 9: The accumulation of error in this case deprived Appellant of due process of law and necessitates reversal pursuant to the Fourteenth Amendment to the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

*See* Doc. 10-1. Petitioner also filed an application for an evidentiary hearing on his claim of ineffective assistance of trial counsel. *See* Doc. 10-2. On July 15, 2013, in Case No. F-2012-446, the OCCA entered its unpublished summary opinion denying Petitioner's application for an evidentiary hearing and affirming the Judgment and Sentence of the district court. *See* Doc. 10-4.

Petitioner commenced the instant habeas corpus action by filing his petition on January 17, 2014. *See* Doc. 1. He identifies the same federal constitutional grounds of error raised on direct

appeal, but presents them in a different order.[2]  *See id.*  In response to the petition, Respondent

addresses Petitioner's claims in the order presented in the petition and argues that Petitioner is not

entitled to habeas corpus relief on grounds 1, 2, 3, 8, and 9 under 28 U.S.C. § 2254(d); and that

grounds 4, 5, 6, and 7 are matters of state law and are not cognizable on habeas corpus review.  *See*

Doc. 10.

## *ANALYSIS*

### A.  Exhaustion

As an initial matter, the Court must determine whether Petitioner meets the exhaustion

requirements of 28 U.S.C. § 2254(b). *See Rose v. Lundy*, 455 U.S. 509, 510 (1982).  Petitioner fairly

presented all grounds of error to the OCCA on direct appeal.  Therefore, the Court finds Petitioner

satisfied the exhaustion requirement before filing his habeas petition.

### B.  Evidentiary hearing

The Court finds that an evidentiary hearing is not warranted as Petitioner has not met his

burden of proving entitlement to an evidentiary hearing.  *See Williams v. Taylor*, 529 U.S. 420

(2000); *Miller v. Champion*, 161 F.3d 1249 (10th Cir. 1998).

### C.  Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be

applied by federal courts reviewing constitutional claims brought by prisoners challenging state

convictions.  Under AEDPA, when a state court has adjudicated a claim, a petitioner may obtain

federal habeas relief only if the state decision "was contrary to, or involved an unreasonable

---

[2]Petitioner omits his allegations, as raised on direct appeal, that his rights under the
Oklahoma Constitution were violated.

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 101-03 (2011); *Williams v. Taylor*, 529 U.S. 362, 402 (2000); *Neill v. Gibson*, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. *See Bell v. Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citing *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1787 (2013).

Here, Petitioner presented his grounds for relief to the OCCA on direct appeal. Because the OCCA addressed Petitioner's claims on the merits, the Court will review the claims under the standards of § 2254(d).

### 1. Improper admission of statement given to police (ground 2)

As his second ground of error, Petitioner claims that his constitutional rights were violated by the trial court's failure to suppress his custodial statements. (Doc. 1 at 6). He directs the Court to his direct appeal brief where he argued that his statement to police on December 8, 2010, was improperly admitted against him at trial because he was not advised of his *Miranda* rights either before or during the interview. (Doc. 10-1 at 9). The OCCA rejected the claim, finding as follows:

Appellant argues in Proposition One that statements admitted against him at trial were the product of custodial interrogation by police without the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Appellant raised this alleged *Miranda* violation at trial. We review the district court's factual findings for clear error and its analysis of applicable law *de novo*. *State v. Pope*, 2009 OK CR 9, ¶ 4, 204 P. 3d 1285, 1287. The trial court properly found that Appellant was not in custody at the time of his relevant statements to police, and no *Miranda* warnings were required. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714, 50 L. Ed. 2d 714 (1977). Appellant's statements were properly admitted at trial.

(Doc. 10-4 at 3).

In *Yarborough v. Alvarado*, 541 U.S. 652 (2004), the Supreme Court summarized its

decisions on the "custody" requirement of *Miranda*. The Court stated:

*Miranda* itself held that preinterrogation warnings are required in the context of custodial interrogations given "the compulsion inherent in custodial surroundings." 384 U.S., at 458, 86 S. Ct. 1602. The Court explained that "custodial interrogation" meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, at 444, 86 S. Ct. 1602. The *Miranda* decision did not provide the Court with an opportunity to apply that test to a set of facts.

After *Miranda*, the Court first applied the custody test in *Oregon v. Mathiason*, 429 U.S. 492, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977) (per curiam). In *Mathiason*, a police officer contacted the suspect after a burglary victim identified him. The officer arranged to meet the suspect at a nearby police station. At the outset of the questioning, the officer stated his belief that the suspect was involved in the burglary but that he was not under arrest. During the 30-minute interview, the suspect admitted his guilt. He was then allowed to leave. The Court held that the questioning was not custodial because there was "no indication that the questioning took place in a context where [the suspect's] freedom to depart was restricted in any way." *Id.*, at 495, 97 S. Ct. 711. The Court noted that the suspect had come voluntarily to the police station, that he was informed that he was not under arrest, and that he was allowed to leave at the end of the interview. *Ibid.*

In *California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983) (per curiam), the Court reached the same result in a case with facts similar to those in *Mathiason*. In *Beheler*, the state court had distinguished *Mathiason* based on what it described as differences in the totality of the circumstances. The police interviewed Beheler shortly after the crime occurred; Beheler had been drinking earlier in the day; he was emotionally distraught; he was well known to the police;

and he was a parolee who knew it was necessary for him to cooperate with the police. 463 U.S., at 1124-1125, 103 S. Ct. 3517. The Court agreed that "the circumstances of each case must certainly influence" the custody determination, but reemphasized that "the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.*, at 1125, 103 S.Ct. 3517 (internal quotation marks omitted). The Court found the case indistinguishable from *Mathiason*. It noted that how much the police knew about the suspect and how much time had elapsed after the crime occurred were irrelevant to the custody inquiry. 463 U.S., at 1125, 103 S. Ct. 3517.

Our more recent cases instruct that custody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances. In *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984), a police officer stopped a suspected drunk driver and asked him some questions. Although the officer reached the decision to arrest the driver at the beginning of the traffic stop, he did not do so until the driver failed a sobriety test and acknowledged that he had been drinking beer and smoking marijuana. The Court held the traffic stop noncustodial despite the officer's intent to arrest because he had not communicated that intent to the driver. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time," the Court explained. *Id.*, at 442, 104 S. Ct. 3138. "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Ibid.* In a footnote, the Court cited a New York state case for the view that an objective test was preferable to a subjective test in part because it does not "'place upon the police the burden of anticipating the frailties or idiosyncrasies of every person whom they question.'" *Id.*, at 442, n.35, 104 S. Ct. 3138 (quoting *People v. P.*, 21 N.Y.2d 1, 9-10, 286 N.Y.S.2d 225, 233 N.E.2d 255, 260 (1967)).

*Stansbury v. California*, 511 U.S. 318, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994) (per curiam), confirmed this analytical framework. *Stansbury* explained that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.*, at 323, 114 S. Ct. 1526. Courts must examine "all of the circumstances surrounding the interrogation" and determine "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Id.*, at 322, 325, 114 S. Ct. 1526 (internal quotation marks and alteration omitted).

Finally, in *Thompson v. Keohane*, 516 U.S. 99, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995), the Court offered the following description of the *Miranda* custody test:

> "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or

> she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."

516 U.S., at 112, 116 S. Ct. 457 (internal quotation marks and footnote omitted).

*Alvarado*, 541 U.S. at 660-63. More recently, in *J.D.B. v. North Carolina*, 131 S. Ct. 2394 (2011), the Supreme Court, relying on *Alvarado*, *Stansbury*, and *Berkemer*, emphasized that determining the "in custody" requirement for *Miranda* purposes requires the police and court to "examine all of the circumstances surrounding the interrogation, including any circumstance that would have affected how a reasonable person in the suspect's position would perceive his or her freedom to leave." *J.D.B.*, 131 S. Ct. at 2402 (internal quotation marks and citations omitted). It is an objective analysis. *Id.*

In the instant case, the Court is tasked with determining whether the OCCA's adjudication of the claim "involved an unreasonable application" of clearly established law when it concluded that Petitioner was not in custody during the interview on December 8, 2010. 28 U.S.C. § 2254(d)(1). *See Williams*, 529 U.S. at 413 ("Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case"). Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The Supreme Court has explained that the "custody test" is a general rule. *Alvarado*, 541 U.S. at 665. "Applying a general standard to a specific case can demand a substantial element of judgment . . . The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*

Upon review of the circumstances surrounding the interview of Petitioner, the Court finds that a reasonable person would have felt at liberty to terminate the interview and leave. There was no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. The circumstances surrounding Petitioner's interview include: the police did not transport Petitioner to the police station or require him to appear at a particular time. Instead, Petitioner had accompanied Hicks to the police station and was there voluntarily. *See Mathiason*, 429 U.S., at 495. After interviewing Hicks, the police investigator, Detective Birmingham, asked Petitioner if he would be willing to speak with the investigators. Although Birmingham did not specifically tell Petitioner that he was free to leave the interview, Petitioner acknowledged at the beginning of the interview that he understood he did not have to talk with the police and confirmed that he was present voluntarily. Birmingham did not threaten Petitioner or suggest he would be placed under arrest if he did not cooperate. *Id.* Instead of pressuring Petitioner with the threat of arrest and prosecution, Birmingham appealed to his interest in telling the truth. *Id.* The interview lasted approximately 55 minutes. All of these objective facts are consistent with an environment in which a reasonable person would have felt free to terminate the interview and leave. Indeed, a number of the facts echo those of *Mathiason*, a per curiam summary reversal in which the Supreme Court found it "clear from these facts" that the suspect was not in custody. *Id.*

As stated above, the custody test is general, and the OCCA's application of Supreme Court law fits within the matrix of Supreme Court decisions as discussed in *Alvarado*. This Court cannot grant relief under AEDPA by conducting its own independent inquiry into whether the state court was correct as a *de novo* matter. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law]

incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). Relief is available

under § 2254(d)(1) only if the state court's decision is objectively unreasonable. *See Williams*, 529

U.S. at 410; *Andrade*, 538 U.S. at 75. Under that standard, relief cannot be granted in this case.

Hence, habeas corpus relief on ground 2 is denied.

### 2. Confrontation Clause violation (ground 3)

In ground 3, Petitioner claims that his rights under the Confrontation Clause were violated

when inadmissible hearsay was used as evidence. (Doc. 1 at 7). On direct appeal, Petitioner argued

that the admission of the autopsy report deprived him of the ability to confront the witnesses against

him because the report reflected that the medical examiner's opinion had been based, in part, upon

what he had been told by an unknown person. (Doc. 10-1 at 23). Petitioner also argued that the

report was irrelevant. *Id.* In his report, the medical examiner provided his opinion of the cause of

death, stating as follows:

> Death of this child was due to complications of a lumbar spine fracture. Subsequent
> to this examination, it was revealed that a boyfriend had confessed to hyperextending
> the child's back while in the bathtub the day before death. This is consistent with the
> injury seen at autopsy. The manner of death is classified as homicide.

(Doc. 10-6 at 8). Petitioner focused his direct appeal claim on the lack of evidence suggesting that

the injury was inflicted "while in the bathtub." (Doc. 10-1 at 24-25). The OCCA denied relief,

finding as follows:

> Appellant claims in Proposition Three that the trial court's admission of the
> medical examiner's report violated his right to confrontation. Trial counsel's
> objection to hearsay appears in the record, but the confrontation claim is raised for
> the first time on appeal. We review it only for for [sic] plain error. The challenged
> statements within the medical examiner's report were not hearsay, as they were not
> offered to prove the truth of the matter asserted therein. For the same reason, the
> statements did not implicate Appellant's right to confront the declarant. *Crawford
> v. Washington*, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9, 158 L. Ed. 2d 177
> (2004) (Confrontation Clause does not bar extrajudicial statements used for purposes

other than truth of matter asserted) (citing *Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 2081-82, 85 L. Ed. 2d 425 (1985)).

(Doc. 10-4 at 4 (citations omitted)).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." *Id.* at 53-54. In reaching its ruling, the Supreme Court distinguished between "testimonial" and "non-testimonial" hearsay statements, indicating that only "testimonial" hearsay statements make the declarant a "witness" within the meaning of the Confrontation Clause. *Id.* at 51. A defendant's confrontation rights are implicated by the admission of testimonial statements against the defendant only when they are admitted to establish the truth of the matter asserted in the statement. *See id.* at 59 n.9 (explaining that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"). *See also Williams v. Illinois*, 132 S. Ct. 2221, 2235 (2012) (stating in a four-justice plurality that admitting an opinion from a DNA expert based on a report from another laboratory did not violate the Confrontation Clause) (plurality op. of Alito, J.). In *Williams*, the Supreme Court determined that *Crawford* does not bar an expert from expressing an opinion based on facts about a case that have been made known to the expert but about which the expert is not competent to testify. *Id.* at 2228.

In Oklahoma, the medical examiner's autopsy report is a testimonial statement. *See Cuesta-Rodriguez v. State*, 241 P.3d 215, 228 (Okla. Crim App. 2010). Dr. Sibley performed the autopsy,

wrote the report, and testified at trial. On cross-examination, Dr. Sibley testified that the information contained in the opinion found on page seven of the report was obtained "from my investigator through law enforcement." (Dkt. # 11-9, Tr. Vol. II at 172). The statement "that a boyfriend had confessed to hyperextending the child's back while in the bathtub the day before death" constituted factual information that Dr. Sibley relied on in reaching his opinion about the manner of death, i.e., that the manner of death was homicide. Thus, the statement contained in Dr. Sibley's opinion was not inadmissible hearsay because, as determined by the OCCA, it was not offered to prove the truth of the matter asserted. *Williams*, 132 S. Ct. at 2228 ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert."); *see also* Okla. Stat. tit. 12, § 2703.

Significantly, Dr. Sibley testified at trial and was available for cross-examination. After counsel for Petitioner objected to admission of the medical examiner's report based on hearsay, the prosecutor asked Dr. Sibley a question on redirect examination to clarify the opinion statement contained in the report. *See* Doc. 11-9, Tr. Vol. II at 191-93. In response to the prosecutor's question, Dr. Sibley testified that Petitioner's description of how he held the victim when the victim was pushed backwards, as given during the videotaped interview on December 8, 2010, was "exactly consistent" with victim's injury, if sufficient force had been used. *Id.* at 192. Petitioner's counsel did not ask any questions on recross. Under these facts, there was no violation of the Confrontation Clause.

Lastly, even if the admission of Dr. Sibley's autopsy report were constitutional error, Petitioner has not established that it "had a substantial and injurious effect or influence in

determining the jury's verdict," thereby entitling him to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The cause of death was not disputed at trial and Dr. Sibley's testimony pertained solely to the cause of death and the mechanism that may have caused the injury. In light of the other evidence pointing to Petitioner as the person who inflicted the injury, including Petitioner's videotaped interview, any constitutional error in admission of the autopsy report was harmless.

Petitioner also argues that the medical examiner's report was improperly admitted because it was not relevant. Admission of evidence is governed by state law. *See* Okla. Stat. tit 12, § 2401. "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quotations and citations omitted). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State court evidentiary rulings, such as those alleged by Petitioner, do not warrant habeas relief unless the ruling rendered the "trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998); *Martin v. Kaiser*, 907 F.2d 931, 934 (10th Cir. 1990) (due process claim related to admission of evidence at state trial will not support habeas relief "absent fundamental unfairness so as to constitute a denial of due process of law").

Nothing in the record suggests that the medical examiner's report was entered into evidence in violation of Petitioner's right to due process. Petitioner complained on direct appeal that the mention of the bathtub in the autopsy report "is highly unreliable because it is inconsistent with [Petitioner's] statements in his video-recorded interview . . . and his trial testimony." *See* Doc. 10-1 at 31. However, Petitioner explained during his trial testimony that "after I gave him a bath . . . I

had his rear end . . . right here, his legs were bent down in a seated position as I was carrying him

to his room." *see* Doc. 11-9, Tr. Vol. II at 206. Petitioner also explained in his videotaped interview

that he had given the victim a bath and that the victim "threw himself back" as Petitioner was putting

him to bed. *See* Doc. 11-11. Upon review of the evidence presented at trial, the Court finds that

Petitioner's right to due process was not violated by admission of the autopsy report. Habeas corpus

relief on ground 3 is denied.

### 3. Jury instruction errors (grounds 4 and 5)

In grounds 4 and 5, Petitioner claims that the trial court erred in instructing the jury. In

general, matters concerning the giving of jury instructions are considered questions of state law and

not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254. *Patton v. Mullin*, 425

F.3d 788, 807 (10th Cir. 2005); *see also Rose v. Hodges*, 423 U.S. 19, 22 (1975) (stating that federal

habeas relief is not permitted for state law errors). It is well established that "errors in jury

instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless

they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'"

*Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting *Long v. Smith*, 663 F.2d 18, 23

(6th Cir. 1981)); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial

conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions

when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of

a fair trial."). "'An omission, or an incomplete instruction, is less likely to be prejudicial than a

misstatement of the law.'" *Maes*, 46 F.3d at 984 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155

(1977)).

### a. Failure to instruct on defense of accident or misfortune (ground 4)

Petitioner claims in ground 4 that the trial court erred in refusing to submit instructions on the defense of accident and misfortune. (Doc. 1 at 9). On direct appeal, Petitioner argued that the instruction was warranted because he "never said that he over extended the child's back in any manner, or that he willfully used more force that [sic] necessary to put the child to bed . . . the injury was purely accidental." (Doc. 10-1 at 33). The OCCA cited *Ball v. State*, 173 P.3d 81, 91-92 (Okla. Crim. App. 2007), and found that Petitioner had not shown that the failure to instruct on the defense of accident or misfortune, i.e., excusable homicide, was a plain or obvious error that affected the outcome of the proceeding. (Doc. 10-4 at 5).

Upon review of the record, the Court finds that Petitioner was not denied a fundamentally fair trial as a result of the trial court's failure to instruct on the defense of accident or misfortune. Petitioner testified at trial. (Doc. 11-9, Tr. Vol. II at 202-246). He denied using a significant amount of force, *id.* at 213, and denied causing the victim's death, *id.* at 227. Petitioner was not prevented from presenting his defense, and the jury was free to find him not guilty of first degree murder based on his defense theory, i.e., that the victim died as the result of an accident or misfortune. It is clear the jury rejected his defense and found the State had proved the elements of first degree murder. Petitioner is not entitled to habeas corpus relief on ground 4.

### b. Failure to instruct on lesser included offense (ground 5)

In ground 5, Petitioner alleges that the trial court erred in denying his requested instructions on the lesser included offense of second degree murder. (Doc. 1 at 12). On direct appeal, Petitioner argued that the evidence presented at trial supported "imminently dangerous conduct" warranting

the instructions. (Doc. 10-1 at 47). The OCCA reviewed the trial court's ruling for an abuse of discretion, and found as follows:

> A defendant is not entitled to instructions on any lesser included offense when he defends against the charge by proclaiming his innocence. *Gilson v. State*, 2000 OK CR 14, ¶ 119, 8 P.3d 883, 918. The evidence showed that Appellant willfully or maliciously caused the child's death by using unreasonable force, or that he was not guilty. The trial court properly denied his requested instructions. *Gilson v. State*, 2000 OK CR 14, 8 P.3d 883, 917.

(Doc. 10-4 at 7 (footnote omitted)).

Significantly, "a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, 'even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense.'" *Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) (quoting *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)); *see also Hicks v. Jones*, 350 F. App'x 199, 202 (10th Cir. 2009) (unpublished).[3] Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction. *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases). Accordingly, habeas relief shall be denied on Petitioner's ground 5 claim that his constitutional rights were violated because the trial court refused to give a jury instruction on the lesser included offense of Second Degree Murder.

---

[3]This unpublished opinion is not precedential but is cited only for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

#### 4. Improper evidentiary rulings (grounds 6 and 7)

In grounds 6 and 7, Petitioner challenges two of the trial court's rulings with regard to admission of evidence. As stated above, admissibility of evidence is an issue of state law. "[F]ederal habeas corpus relief does not lie for errors of state law." *McGuire*, 502 U.S. at 67-68 (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions); *see also Hooks v. Workman*, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" *Maes*, 46 F.3d at 987 (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991)); *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (habeas relief only if the evidence was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process"). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" *Jackson*, 143 F.3d at 1322 (quoting *United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973) (internal quotation omitted).

##### a. Improper admission of testimony (ground 6)

In ground 6, Petitioner claims that his right to due process was violated when the "DHS investigator's impermissible opinion" was admitted into evidence. (Doc. 1 at 12). On direct appeal, Petitioner claimed that the opinion of Jennifer Chafin, an investigator for the Washington County

Department of Human Services, regarding the response of Shannon Hicks upon learning of the death of her child, was improperly admitted because it was irrelevant and served no purpose other than to garner sympathy for Hicks. (Doc. 10-1 at 19-20). Petitioner further claimed that Chafin's "opinions regarding the truthfulness or untruthfulness of Shannon Hicks' or Appellant's statements, and her opinion regarding Appellant's guilt invaded the province of the jury and were inadmissible." *Id.* at 21 (citation omitted). The OCCA denied relief, finding as follows:

> In Proposition Two, Appellant argues that testimony from a Department of Human Services child welfare investigator was irrelevant and unfairly prejudicial. The admission of evidence over a timely objection is ordinarily discretionary and will not be reversed on appeal unless clearly erroneous or manifestly unreasonable. We find the testimony was relevant to the issues at trial, and its relevance was not substantially outweighed by the danger of unfair prejudice of other countervailing factors. The trial court properly admitted this testimony.

(Doc. 10-1 at 4 (citations omitted)).

After reviewing the record in this case, the Court finds Petitioner has failed to make the showing necessary for habeas corpus relief. Chafin's testimony concerning Hicks' response to her son's death was relevant because it tended to show that Hicks was not responsible for the victim's injuries and death. In addition, Chafin was involved in the investigation of the victim's death because she worked for DHS. Her testimony regarding the results of her investigation was not improper. In summary, Petitioner has failed to demonstrate that admission of Chafin's testimony rendered his trial fundamentally unfair. Petitioner's request for habeas corpus relief on ground 6 shall be denied.

### b. Improper admission of gruesome photograph (ground 7)

In ground 7, Petitioner claims that the trial court erred in admitting an autopsy photograph showing the victim's severed spinal column. (Doc. 1 at 13). On direct appeal, Petitioner argued that

the photograph was more prejudicial than probative, and, for that reason, inadmissible. (Doc. 10-1 at 38). The OCCA cited *Cole v. State*, 164 P.3d 1089, 1096-97 (Okla. Crim. App. 2007), and found "[t]his photograph was probative of the nature of the injury and the force required to cause it, and was not unduly prejudicial." (Doc. 10-4 at 5).

After reviewing the record in this case, the Court finds Petitioner has not made the showing necessary to be entitled to habeas corpus relief. The record reflects that, prior to commencement of trial, the trial judge reviewed the photographs in chambers. (Doc. 11-9, Tr. Vol. II at 4-10). After carefully reviewing the autopsy photograph of the victim's injury in light of the parties' arguments and over defense counsel's objections, the trial judge ruled that the photograph was admissible. *Id.* at 10. During Dr. Sibley's testimony, the photograph was not enlarged or projected on the courtroom Elmo, *see id.* at 160. Dr. Sibley described the victim's injury as demonstrated by the autopsy photograph. *Id.* at 161-62. The photograph was published to the jury, then retrieved and returned to a table in the courtroom. *Id.* at 163. This Court has reviewed the photograph, *see* Doc. 10-8, and finds that, in light of all the evidence presented at trial and the procedures utilized by the trial court, admission of the complained of photograph did not render Petitioner's trial fundamentally unfair. Habeas corpus relief on ground 7 is denied.

### 5. Prosecutorial misconduct (ground 8)

In ground 8, Petitioner alleges that the prosecutor engaged in improper conduct when, during closing argument, he broke a stick in front of the jury to simulate the breaking of the victim's backbone. (Doc. 1 at 13). Petitioner argued on direct appeal that the prosecutor's demonstration violated his right to due process. (Doc. 10-1 at 40). The OCCA reviewed for plain error and found that "[d]emonstrations based on the evidence presented at trial are generally not erroneous. The

prosecutor's brief demonstration was based in the trial evidence and was not so prejudicial as to outweigh the probative value of helping the jury understand the State's theory of the crime." (Doc. 10-4 at 5-6 (internal quotation omitted)).

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. *Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-48 (1974); *Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998). In considering whether a habeas petitioner has satisfied this standard, the offending prosecutorial remark or action must be placed in the context of the whole trial, and not viewed in isolation. *Greer*, 483 U.S. at 765-66. "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1275-76 (10th Cir. 1999). "A prosecutor may not use closing argument to inflame the passions and prejudices of the jury." *Malicoat v. Mullin*, 426 F.3d 1241, 1256 (10th Cir. 2005).

In addition, the Tenth Circuit Court of Appeals has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due-process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting *McGuire*, 502 U.S. at 75). Because the OCCA applied the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test. *Id.* (citing 28 U.S.C. § 2254(d)); *see also Dockins v.*

*Hines*, 374 F.3d 935, 940 (10th Cir. 2004). A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." *Russell*, 411 U.S. at 432.

Upon review of the record, the Court cannot conclude that the OCCA's ruling "was not merely wrong but unreasonable." *Dockins*, 374 F.3d at 940. On direct examination, the medical examiner testified that "there would have been an audible snapping sound" when the victim's back broke. (Doc. 11-9, Tr. Vol. II at 164). Thus, the Court agrees with the OCCA that when, during closing argument, the prosecutor broke a stick in front of the jury, the demonstration was based on evidence presented at trial. Although the prosecutor's theatrics come close to crossing the line for this Court, the Court finds that, when viewed in the context of the entire trial, the brief demonstration did not result in a fundamentally unfair trial. *Malicoat*, 426 F.3d at 1256. Petitioner has failed to show that the OCCA's conclusion was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas corpus relief on Petitioner's claim of prosecutorial misconduct shall be denied.

### 6. Ineffective assistance of counsel (ground 1)

As his first ground of error, Petitioner alleges that trial counsel provided ineffective assistance. *See* Doc. 1 at 4. In support of this claim, Petitioner directs the Court to his direct appeal brief, pages 43-46, his direct appeal reply brief, pages 8-10, and his application for evidentiary hearing, filed December 11, 2012. On direct appeal, Petitioner argued that trial counsel provided ineffective assistance when they failed to request necessary jury instructions and to object to the breaking of a stick by the prosecutor during closing argument, thereby failing to preserve the record for appellate review. (Doc. 10-1 at 43-44). Petitioner also alleged that counsel provided ineffective

assistance when they failed to utilize available evidence to impeach Hicks. *Id.* at 44-46. The OCCA rejected these claims, citing *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

To be entitled to habeas corpus relief on his claims of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication was an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Under *Strickland*, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland*, 466 U.S. at 687; *Osborn v. Shillinger*, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. *Strickland*, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also* *Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002); *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. This Court's review of the OCCA's decision on ineffective assistance of counsel

claims is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under *Strickland* and through the "deferential" lens of § 2254(d)).

For the reasons discussed below, Petitioner's claims of ineffective assistance of trial counsel fail under the doubly differential standards of 28 U.S.C. § 2254(d) and *Strickland*. *Pinholster*, 131 S. Ct. at 1403.

### a. Failure to request instruction and to object to prosecutorial misconduct

Petitioner claims that trial counsel provided ineffective assistance by failure to request instructions on the defense of Accident and Misfortune. Because counsel failed to request the instructions, the OCCA reviewed the failure to instruct for plain error and found that because "the instructional omissions, and the trial court's admission of particular evidence and argument, did not result in reversible error," Petitioner could not satisfy the prejudice prong of *Strickland*. (Doc. 10-4 at 6). This Court determined above that, because Petitioner was not prevented from presenting his defense, and the jury was free to find him not guilty of first degree murder based on his defense theory, i.e., that the victim died as the result of an accident or misfortune, Petitioner was not deprived of a fundamentally fair trial as a result of the court's failure to instruct on the defense of Accident and Misfortune. Therefore, Petitioner cannot show that the result of his trial would have been different but for counsels' failure to request the instruction and cannot satisfy the prejudice prong of *Strickland*.

Petitioner also claims that trial counsel provided ineffective assistance in failing to object to the prosecutor's improper breaking of a stick during closing argument to simulate the breaking of the victim's back. However, this Court determined above that the prosecutor's demonstration was

supported by evidence presented during trial and that the brief demonstration did not render Petitioner's trial fundamentally unfair. As a result, had counsel objected, the objection would have been overruled. Therefore, Petitioner cannot satisfy the deficient performance prong of *Strickland*. Furthermore, as determined by the OCCA, Petitioner fails to satisfy the prejudice prong of *Strickland*. Petitioner is not entitled to habeas relief on this claim.

### b. Failure to use available evidence to impeach Shannon Hicks

Petitioner also claims that trial counsel provided ineffective assistance in failing to use available evidence to impeach the victim's mother, Shannon Hicks. On direct appeal, Petitioner filed an Application for Evidentiary hearing with regard to this claim. *See* Doc. 10-2. Petitioner attached to the application the affidavits of two witnesses, Samantha Gillham and Gretchen Trimble, who lived close to the home of Hicks and Petitioner and had talked to them about the events preceding the victim's death.[4] *Id.*, Exs. 1, 2. In the first affidavit, Gillham averred that she lived next door to Hicks and Petitioner and had become close to Hicks. *Id.*, Ex. 1 at 1. She also averred that Hicks told her "more than once that [C.N.] couldn't walk on Monday's [sic] night." *Id.* at 6. In the second affidavit, Trimble states that she is Gillham's mother, *id.*, Ex. 2 at 1, and avers that the day after the victim's death, she talked to Hicks who told her that the evening before he died, C.N. "could not walk and she had to carry him to bed." *Id.* at 3. Petitioner argued that, because Hicks testified at trial that she never determined that C.N. was unable to walk during the evening prior to his death, *see* Doc. 11-9, Tr. Vol. II at 86, these witnesses could have impeached Hicks' credibility.

---

[4]Both "Samantha" and "Gretchen" are mentioned during Petitioner's videotaped interview. *See* Doc. 11-11.

In rejecting this claim on direct appeal, the OCCA reviewed the materials submitted by Petitioner in support of his application for an evidentiary hearing and found that the materials were not "clear and convincing evidence of a strong possibility that trial counsel was ineffective." *Id.* at 7. Citing *Snow v. State*, 876 P.2d 291, 296 (Okla. Crim. App. 1994), the OCCA stated "[a]s there is no claim defense counsel was not aware of these witnesses, the decision not to call them must be considered reasonable trial tactics. Reasonable trial tactics, even those which ultimately are not successful, are not grounds for finding trial counsel ineffective." (Doc. 10-4 at 7).

Counsel is presumed to have acted in an "objectively reasonable manner" and in a manner that "might have been part of a sound trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002). Where the facts establish that decisions made by counsel were, in fact, "strategic choices made after thorough investigation of law and facts relevant to plausible options," those decisions are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Once a decision is determined to be strategic, the petitioner may only establish deficient performance if "the choice was so patently unreasonable that no competent attorney would have made it." *Bullock*, 297 F.3d at 1046 (citations and internal quotes omitted). Decisions regarding impeaching witnesses and introducing evidence are "quintessentially" matters of trial strategy and tactics. *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008); *Boyd*, 179 F.3d at 915; *see also Strickland*, 466 U.S. at 699.

The record reflects that Petitioner's trial counsel thoroughly cross-examined Hicks and was able to impeach her credibility by securing her admission that she had lied at the preliminary

hearing.[5] (Doc. 11-9, Tr. Vol. II at 84). Furthermore, had the potential witnesses testified that Hicks had in fact determined that the victim was unable to walk the night before he died, the testimony would have impeached Petitioner's credibility because Petitioner testified that he saw the victim move his legs on the morning of December 7, 2010. *Id.* at 218. Under the facts of this case, trial counsel's performance was not deficient with respect to the "impeachment evidence" identified by Petitioner on direct appeal. Furthermore, Petitioner fails to satisfy the prejudice prong of *Strickland*. Petitioner is not entitled to habeas relief on this claim.

In summary, Petitioner has not shown that the OCCA's adjudication of his claims of ineffective assistance of trial counsel was an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Therefore, Petitioner has failed to demonstrate that he is entitled to habeas corpus relief on his claims of ineffective assistance of trial counsel. *Pinholster*, 131 S. Ct. at 1403.

### 7. Cumulative error (ground 9)

In ground 9, Petitioner argues the cumulative effect of the errors alleged in grounds 1-8 deprived him of his right to a fair trial. (Doc. 1 at 14). On direct appeal, Petitioner asserted that "[e]ven if none of the previously discussed errors can, when viewed in isolation, necessitate reversal of Appellant's conviction, the combined effect of these errors deprived him of a fair trial and requires that his conviction be reversed." (Doc. 10-1 at 48 (citations omitted)). The OCCA denied

---

[5]At trial, Hicks testified that, after C.N. began vomiting, she obtained anti-nausea prescription medication from a friend and gave it to C.N. even though it had not been prescribed for C.N. (Doc. 11-9, Tr. Vol. II at 82-83). She also acknowledged that, during her preliminary hearing testimony, she lied when she denied giving C.N. the prescription medication, but explained that, at that time, she "was scared" about admitting she had given C.N. a medication that had not been prescribed for him. *Id.* at 84.

relief, finding "no substantive error in Appellant's claims. Where there is no error, there is no accumulation of error." (Doc. 10-4 at 8 (citation omitted)).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Wood*, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). The Tenth Circuit has held that a cumulative error analysis is applicable only where there are two or more actual errors. *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003). Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review. *Matthews v. Workman*, 577 F.3d 1175, 1195 (10th Cir. 2009). Cumulative impact of non-errors is not part of the analysis. *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing *Rivera*, 900 F.2d at 1471). "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *Grant v. Trammell*, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting *Rivera*, 900 F.2d at 1470).

In this case, the Court has not found two or more harmless errors during Petitioner's trial. As a result, there is no basis for a cumulative error analysis. Petitioner fails to show that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas corpus relief is denied on ground 9.

## D. Certificate of appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. *See Dockins*, 374 F.3d at 937-38. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### CONCLUSION

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The petition for a writ of habeas corpus (Doc.1) is **denied**.

2. A separate judgment shall be entered in this matter.

3. A certificate of appealability is **denied**.

4. The Clerk shall send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals as it relates to Tenth Circuit Case No. 15-5057.

ORDERED THIS 30th day of July, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE